# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BILLY R. DEARMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 14-CV-0162-CVE-PJC |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner, | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Before the Court is the report and recommendation (Dkt. # 20) of Magistrate Judge Paul J. Cleary (the magistrate judge) recommending that the Court reverse and remand the Commissioner's decision to deny plaintiff's claim for disability benefits. The magistrate judge found that the administrative law judge (ALJ) failed to evaluate the opinions of one of plaintiff's treating physicians according to Tenth Circuit precedent. Dkt. # 20, at 12-13. Defendant objects, arguing that the ALJ's error was harmless. Dkt. # 21, at 1. Plaintiff responds that defendant is asking the Court to reweigh the evidence and that the ALJ's error cannot be harmless. Dkt. # 22.

## I.

Plaintiff was 56 years old when he applied for disability benefits on June 15, 2011. Dkt. # 13-5, at 2. He alleged both mental and physical disabilities, including bipolar disorder, ADHD, obsessive-compulsive disorder, depression, and a history of back and ankle injuries. Dkt. # 13-2, at 46; Dkt. # 13-6, at 6. His claim was denied initially and upon reconsideration, Dkt. # 13-4, at 2, 7, after which plaintiff sought a hearing before an ALJ. Id. at 12. The hearing was held on December 10, 2012. Dkt. # 13-2, at 42.

At the hearing, plaintiff testified that he had completed the tenth grade, but he did not have a GED. Id. at 47. He lived with his girlfriend who, along with his sister, helped him complete his application for benefits. Id. at 47, 60. During the day, plaintiff fed and watered the animals that he and his girlfriend kept. Id. at 52. He drove to nearby stores twice a week, but he always patronized the same stores because he needed routine. Id. at 54. He stated that, while driving, he would occasionally retrace his path to ensure that he had not unintentionally harmed others. Id. For many years, plaintiff was employed as a welder. Id. at 48. The same employer fired and rehired plaintiff several times for a welding position; plaintiff believed that the firings had been because of his "mental issues." Id. After plaintiff lost his welding position permanently, he was briefly employed as a maintenance worker and janitor.[1] Id. at 64; see also Dkt. # 13-6, at 27.

Plaintiff described physical conditions regarding his back, legs, and right ankle, stemming primarily from an auto accident. He testified that he could sit no more than an hour, stand no more than two hours, and walk no more than 1.5 blocks. Dkt. # 13-2, at 50-51. His physical ailments required him to lie down for approximately three hours every day. Id. at 51. He also testified that his left thumb had been partially severed in 1973, affecting his grip. Id. He would drop items at least once a week, and he could lift no more than a two-pound can of animal feed. Id. at 52. Plaintiff also testified to numerous psychological complaints. He described feelings of paranoia, frequent and intense panic attacks, mood swings, and insomnia. Id. at 56-57. For the year prior to the hearing, plaintiff had attended counseling with Maura Pollak, L.P.C., every two weeks, and once a month he would speak to Christopher Blaisdell, D.O. Id. at 54-55. Dr. Blaisdell had begun prescribing

---

[1] At the hearing, the ALJ stated, and plaintiff's counsel agreed, that plaintiff's employment as a welder was his only past relevant work. Dkt. # 13-2, at 65.

medication to treat plaintiff's psychological complaints; the medications helped plaintiff sleep but, according to his testimony, they caused numerous side effects, including occasional auditory hallucinations and suicidal thoughts. Id. at 57-58. Plaintiff testified that he was nervous around crowds and was not a social person. Id. at 59.

Vocational expert (VE) Cheryl Ann Mallon, M.S. in Rehabilitation Counseling and Psychology, also testified at the hearing. The ALJ presented the VE with a hypothetical person limited to medium work who "could no more than occasionally stoop, was limited to simple repetitive tasks, could relate to . . . supervisors and coworkers only superficially, and [could] not work with the public." Id. at 66-67. The VE testified that such a person would not be able to perform plaintiff's past work as a welder. Id. at 67. However, the hypothetical person could perform other available work in the economy, including kitchen helper and warehouse worker. Id. at 68. Plaintiff's counsel asked the VE to review a mental residual functional capacity (RFC) assessment and a mental status form (collectively, the forms) signed by Pollak and Dr. Blaisdell. Id. at 69. If the limitations identified in these opinions were included with the ALJ's first set of limitations, the VE believed that the hypothetical person would not be able to function in the workplace. Id.

The ALJ issued his decision on January 9, 2013. Id. at 10. He found that plaintiff had four severe impairments--a history of back pain, a history of ankle injuries, mild anxiety, and obsessive-compulsive disorder traits--but those impairments did not meet or exceed a listed impairment in the regulations. Id. at 15. He considered whether plaintiff's impairments satisfied the "paragraph B" or "paragraph C" criteria, but he concluded that they did not. Id. at 16. He found that plaintiff had the RFC to perform medium work with only occasional stooping, and limitations that his work be simple

3

and repetitive, that he could relate to supervisors and coworkers only superficially, and that he could not work with the public. Id. at 16-17.

The ALJ then summarized plaintiff's testimony, as well as the medical and other record evidence. Consultative examiner Minor W. Gordon, Ph. D., provided a psychological evaluation of plaintiff on August 28, 2011. Id. at 18. Dr. Gordon noted that plaintiff had "problems stemming from his obsessive-compulsive personality traits and from mild anxiety," but he concluded that plaintiff was capable of routine, repetitive work with only superficial relationships with coworkers and supervisors. Id.; see also Dkt. # 13-7, at 42-43. Consultative examiner Sabera Shabnam, M.D., conducted a physical examination of plaintiff on September 17, 2011. Dkt. # 13-2, at 18; see also Dkt. # 13-7, at 45. Dr. Shabnam found that plaintiff could move around the room easily, that ankle flexion was normal, and that plaintiff's back pain did not restrict his movement. Dkt. # 13-2, at 18; see also Dkt. # 13-7, at 46-50. The forms signed by Pollak and Dr. Blaisdell "identified [plaintiff] almost exclusively with 'marked' and 'severe' limitations on his mental abilities." Dkt. # 13-2, at 18. Dr. Blaisdell both signed and stamped the forms, and the stamp shows his name, national provider identifier, and Oklahoma license number. Dkt. # 13-7, at 195, 198. Edith King, Ph. D., and James Levasseur, Ph. D., also completed mental RFC assessment forms, and each concluded that plaintiff could perform simple tasks. Dkt. # 13-2, at 18, see also Dkt. # 13-7, at 68, 153.

The ALJ gave great weight to Dr. Gordon's evaluation, and significant weight to the mental RFC assessment forms completed by Dr. King and Dr. Levasseur. Dkt. # 13-2, at 19. Some weight was given to the third-party function report of plaintiff's girlfriend. Id. The ALJ gave "only very limited weight" to the forms signed by Pollak and Dr. Blaisdell because: the forms repeated plaintiff's statements about himself; Pollak was "not an acceptable medical source"; the forms were

4

"clearly exaggerating" plaintiff's limitations; and the forms were contradicted by the opinion of Dr. Gordon. Id. at 18-19. The ALJ did not mention Dr. Blaisdell's signature or stamp. The ALJ discussed, but assigned no weight to, the third-part function report of plaintiff's sister. Id. at 19.

Based on the RFC determination, the evidence in the record, and the testimony of the VE, the ALJ determined that plaintiff could not resume his past relevant work as a welder. Id. However, the ALJ found that plaintiff could perform other jobs existing in the national economy, and he specifically cited the two positions identified by the VE. Id. at 20. The ALJ concluded that plaintiff was not disabled and, therefore, was not entitled to benefits. Id. at 21. Plaintiff requested a review of the ALJ's decision by the Appeals Council, but the Appeals Council denied plaintiff's request. Id. at 2. Plaintiff sought judicial review, Dkt. # 2, and the matter was referred to the magistrate judge for a report and recommendation. The magistrate judge recommended that this Court reverse and remand the ALJ's decision, on the ground that the ALJ did not properly evaluate the medical evidence. Dkt. # 20, at 12. Defendant has filed an objection to the report and recommendation, Dkt. # 21, and plaintiff has filed a response to defendant's objection. Dkt. # 22.

## II.

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. FED. R. CIV. P. 72(b). However, the parties may object to the magistrate judge's recommendation within fourteen days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection

is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. FED. R. CIV. P. 72(b).

## III.

The agency has established a five-step process to review claims for disability benefits. See 20 C.F.R. § 404.1520. The Tenth Circuit has outlined the five step process:

> Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." [Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004)]. If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments." *Id*. An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. See 20 C.F.R. § 404.1521. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." *Allen*, 357 F.3d at 1142. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work. *See id.* Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient residual functional capability to perform other work in the national economy. *See id.*

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).

The Court may not reweigh the evidence or substitute its judgment for that of the ALJ but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if the decision is supported by substantial evidence. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004). The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

The ALJ decided plaintiff's case at step five, finding that plaintiff could not perform his past relevant work as a welder but that he could perform other work existing in the national economy. Dkt. # 13-2, at 19-20. Having so decided, the ALJ found plaintiff not disabled and denied his claim for benefits. Id. at 21. The magistrate judge recommends that the ALJ's decision be reversed and remanded for failure to properly evaluate the forms as the opinions of a treating physician. Dkt. # 20, at 11-12. Defendant objects to the report and recommendation, arguing that the magistrate judge did not consider whether the ALJ's error was harmless. Dkt. # 21, at 1. Plaintiff responds that the ALJ's failure could not be harmless error and that the magistrate judge's report and recommendation should be adopted. Dkt. # 22, at 3.

Here, the ALJ treated the forms signed by both Dr. Blaisdell and Pollak as being solely the opinions of Pollak. Dkt. # 13-2, at 18 ("In a mental status form signed July 23, 2012, counselor Maura Pollack [sic], LPC repeated [plaintiff's] remarks about himself."). The magistrate judge found the forms to be the opinions of Dr. Blaisdell, citing McGoffin v. Barnhart, 288 F.3d 1248 (10th Cir. 2002). Dkt. # 20, at 13. The ALJ in McGoffin refused to give any weight to an assessment prepared by the claimant's case manager and signed by her treating psychiatrist because, inter alia, the ALJ doubted that the assessment accurately reflected the treating psychiatrist's opinion. McGoffin, 288 F.3d at 1252. The Tenth Circuit held that it was error to disregard the assessment based on doubts as to whether the signing physician agreed with the opinion. Id. Rather, if the ALJ believed the assessment was not the physician's opinion, then the ALJ should have contacted the physician for clarification. Id. Plaintiff argues that McGoffin is inapposite because the ALJ here did not question

7

the authenticity of Dr. Blaisdell's signatures; rather, the ALJ ignored the signatures entirely.[2] Dkt. # 21, at 3. Plaintiff is correct that the ALJ here did not speculate about whether the forms represented Dr. Blaisdell's actual opinions about plaintiff. However, McGoffin remains applicable to this case for a more fundamental reason: in McGoffin, the Tenth Circuit considered an assessment completed by non-medical personnel but signed by a physician to be the opinion of the physician. See McGoffin, 288 F.3d at 1252. Thus, following McGoffin, the forms must be treated as the opinions of Dr. Blaisdell.

The magistrate judge found Dr. Blaisdell to be one of plaintiff's treating physicians, Dkt. # 20, at 12, a finding that defendant does not contest in its objection. A treating physician is one "who provides . . . or has provided . . . medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [a claimaint]." 20 C.F.R. § 404.1502. The Tenth Circuit has determined that a treating physician must have "a relationship of both duration and frequency" with the claimant. Sissom v. Colvin, 512 F. App'x 762, 765 (10th Cir. 2013)[3] (citing Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). Dr. Blaisdell had numerous appointments with plaintiff over a period of several months. See, e.g., Dkt. # 13-7, at 156, 162, 174. Dr. Blaisdell's treatment notes show that a few of these appointments included in-depth discussion with plaintiff about his symptoms and treatment history, although others appear to have been routine discussions of

---

[2] The ALJ's actions are confusing, both because Dr. Blaisdell signed and stamped the forms and because plaintiff's counsel directed the ALJ to Dr. Blaisdell's signatures on the forms during the hearing. Dkt. # 13-2, at 46; Dkt. # 13-7, at 195, 198.

[3] Unpublished decisions are not precedential, but they may be cited for their persuasive value. See FED. R. APP. 32.1; 10TH CIR. R. 32.1.

plaintiff's medications. E.g. id. at 156, 174. Based on the evidence in the record, Dr. Blaisdell must be considered a treating physician.

As the forms are Dr. Blaisdell's opinions and Dr. Blaisdell is one of plaintiff's treating physicians, precedent requires the ALJ to evaluate the forms as the opinions of a treating physician. A treating physician's opinion is generally entitled to more weight than medical opinion evidence from non-treating sources. Langley v. Barnhart, 373 F.3d 1116, 1119 (10th Cir. 2004). To determine the weight afforded to treating physician evidence, the ALJ:

> must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. [I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

Id. Even if a treating physician's opinion is not entitled to controlling weight, treating physician evidence is still entitled to deference, and the ALJ must consider six factors concerning the weight the evidence should be given. Id. The Tenth Circuit has been clear that an ALJ must "'give good reasons in [the] notice of determination or decision'" for the weight assigned to a treating physician's opinion, and the ALJ's decision must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion . . . ." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003).

Defendant does not argue that the ALJ properly considered the forms, and such a position is not supported. The ALJ's decision states that he gave "only very limited weight" to the forms because: they were repetitious of plaintiff's statements; Pollak was "not an acceptable medical source"; Pollak was "clearly exaggerating" plaintiff's mental limitations; and the forms were contradicted by the opinion of Dr. Gordon. Dkt. # 13-2, at 18-19. The ALJ did not employ the

9

framework set out in Langley to determine if the forms were entitled to controlling weight. See Langley, 373 F.3d at 1119. Even assuming they were not, the ALJ did not weigh the forms according to the six factors set out in Langley for the analysis of a treating physician's opinion. Id. Thus, as the magistrate judge concluded, Dkt. # 20, at 13, the ALJ failed to properly evaluate the forms, which is reversible error.

Defendant argues that, despite the ALJ's failure, the decision to deny benefits should be affirmed under the harmless error doctrine. Dkt. # 21, at 1. The Tenth Circuit has said that an ALJ's flawed decision may be affirmed "where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004). The Tenth Circuit has admonished courts to "apply harmless error analysis cautiously in the administrative review setting," Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005), because

> if too liberally embraced, it could obscure the important institutional boundary . . . that courts avoid usurping the administrative tribunal's responsibility to find the facts . . . [and] to the extent a harmless-error determination rests on legal or evidentiary matters not considered by the ALJ, it risks violating the general rule against post hoc justification of administrative action.

Allen, 357 F.3d at 1145. The Tenth Circuit has employed harmless error analysis where medical opinions not weighed or incorrectly weighed were either consistent with or more prejudicial to the claimant than the ALJ's eventual findings. See Keyes-Zachary v. Astrue, 695 F.3d 1156 (10th Cir. 2012). Similarly, the Tenth Circuit found it harmless error where an ALJ did not discuss a particular physician's opinion because the ALJ, following the proper procedure, rejected the "nearly identical opinion" of another physician. Lately v. Colvin, 560 F. App'x 751, 754 (10th Cir. 2014). Defendant

argues that most of the reasons for assigning little weight to the forms--the repetition of plaintiff's remarks about himself, the "clear exaggerating" of plaintiff's abilities, and the contrary opinion of Dr. Gordon--remain applicable and, as such, the ALJ's error in evaluating the forms is harmless. Dkt. # 21, at 4.

However, the Court cannot "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." Allen, 357 F.3d at 1145. Defendant points out that the opinions "began no less than 35 descriptions of [p]laintiff's symptoms with 'Client reports . . .' or 'He reports . . .'" Dkt. # 21, at 4. However, Dr. Gordon's opinion--to which the ALJ assigned great weight--contains similar information presented in a similar manner, albeit without the offending phrases. Compare Dkt. # 13-7, at 42 ("He denied any past alcohol problem. He denied current illicit drug abuse."), with id. at 195 ("Client reports he does not smoke, drink, or use drugs."). Thus, it is not clear that the ALJ, considering the forms as Dr. Blaisdell's opinions, would continue to discount them because of the repetition of plaintiff's statements. As to the "clear exaggeration" of plaintiff's limitations, the ALJ may, upon review, arrive at the same conclusion even though the forms are the opinions of a treating physician. However, that decision belongs to the ALJ; the Court cannot reweigh the evidence or substitute its judgment for the ALJ's. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). The fact that a contrary medical opinion exists does not undermine--indeed, it enhances--the need for the ALJ to make a proper determination of the weight to be given to the forms. This is especially true where, as here, the improperly weighed opinions would support an RFC more favorable to plaintiff. See Smith v. Colvin, No. 13-CV-0269-CVE-TLW, 2014 WL 2216998, at *5 (N.D. Okla. May 29, 2014) ("[R]equiring the ALJ to perform a proper treating physician analysis is not a pointless formality,

and there is a reasonable probability that this could impact the outcome of the proceedings."). Bearing in mind that the harmless error analysis is to be applied "cautiously," Fischer-Ross, 431 F.3d at 733, the Court cannot find harmless the ALJ's error in considering the forms to be solely the opinions of Pollak. Plaintiff's case is remanded to the ALJ for a proper determination of the weight to be given to the forms as the opinions of plaintiff's treating physician, Dr. Blaisdell.

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 20) is hereby **accepted as entered**. The decision of the Commissioner is hereby **reversed and remanded** for further proceedings. A separate judgment is entered herewith.

**DATED** this 22nd day of May, 2015.

*[Signature]*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE